UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| VERNON R., | ) |
| | ) |
|         Plaintiff | ) |
| | ) |
| v. | )    No. 1:23-cv-00250-JAW |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|         Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Social Security Disability appeal seeks remand on the bases that the Administrative Law Judge (ALJ) mischaracterized the testimony of psychologist Ira H. Hymoff, Ph.D., and improperly ignored or dismissed evidence supporting physical limitations. *See* Plaintiff's Brief (ECF No. 9) at 9-19.  I agree that the ALJ's rejection of the Hymoff testimony is unsupported by substantial evidence and, on that basis, recommend that the Court vacate the Commissioner's decision and remand this case for further proceedings consistent with this decision.[1]

## I. Background

The ALJ found that, from the Plaintiff's alleged onset date of disability, January 1, 1996, through his date last insured for SSD benefits, June 30, 1996, *see* Record at 16-17, he (1) had medically determinable impairments of Osgood-Schlatter disease of his left knee and adjustment disorder with depression NOS [Not Otherwise

---

[1] I need not and do not reach the Plaintiff's second argument.

1

Specified], *see id.* at 17, (2) had no severe impairment or combination of impairments, *see id.*, and (3) therefore had not been disabled, *see id.* at 22. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-3, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 404.981.

## II.  Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III.  Discussion

The ALJ called Dr. Hymoff to testify at the Plaintiff's June 28, 2022, hearing after agency nonexamining consultants found insufficient evidence on initial review and reconsideration to assess the Plaintiff's mental health conditions as of his date last insured for SSD benefits, June 30, 1996. *See* Record at 20, 75, 81. The ALJ first asked Dr. Hymoff whether the Plaintiff had any mental impairment during the

relevant period. *See id.* at 39. Dr. Hymoff testified that "[i]n terms of the affective disorder, he's had a range of diagnoses starting with adjustment disorder with depressed features to dysthymia to depressive disorder NOS [not otherwise specified] to major depressive disorder, so his depressive symptoms have kind of crossed levels of severity from acute but mild to more chronic." *Id.* at 40. He elaborated:

> The early stages that we have more suggest a milder form of depressive disorder, the dysthymia; however, I think if you look at the entire record the [Plaintiff] has struggled with depression . . . most of his life, at least most of the time since '96. But . . . the record is very limited in those early years, so I believe that probably I would go with a diagnosis of depressive disorder, NOS, at that time. I think it's beyond an adjustment disorder, and I think there's a chronic kind of dysthymia, but at times it was more acute, so the depressive symptoms did emerge, and those notes come from . . . 2014, 2012, you know, sometime later. I've got the evaluation by Dr. Newcomb [John Newcomb, M.D.] . . . which was done on 1/24/97. . . . At the time, he was given the diagnosis of depressive disorder, NOS.

*Id.* at 40-41, 1003-05. The ALJ then asked Dr. Hymoff whether he could "ascertain from the record would there have been any functional limitations for the [Plaintiff]." *Id.* at 41. Dr. Hymoff responded:

> I believe so. I think given that he did struggle with depression, and I'll also say that in reading this record I also noted in one of the evaluations the diagnosis was depression due to medical condition . . . but in terms of the limitations, I would say simple, repetitive tasks. I would also add probably no or very limited contact with the public and only occasional contact with coworkers and supervisors.

*Id.* The ALJ asked Dr. Hymoff to explain "why that level of severity based on it looks like he maybe went every three months" for treatment and "was doing well[.]" *Id.* Dr. Hymoff testified:

> I'm basing it on the pattern of social isolation that's mentioned in the record. . . . Some rather unusual interpersonal relationships, for

> example, the records talk about an incident—I'm not sure when it occurred—where he felt his neighbors were selling drugs and he blocked the road and he had to appear in court and there was a protection order against him and repeated concerns about people using drugs. It mentioned he tried to work in a game room and had all kinds of difficulties with the kids that came there. So, . . . there's a certain degree of interpersonal difficulty there . . . whether it's mostly his personality, but to some degree it's probably related to his depression and avoidance, so that's why I'm putting those restrictions in terms of the interpersonal area.

*Id.* at 42. The ALJ inquired whether there were any additional limitations, and Dr. Hymoff identified one more: "only occasional or modest changes in work expectations." *Id.*

The ALJ declined to find a severe mental impairment or to adopt the limitations set forth by Dr. Hymoff, explaining:

> Dr. Hymoff testified that the evidence does not support a PTSD diagnosis and the [Plaintiff's] mental impairment is best described as adjustment disorder with depression NOS. He indicated the [Plaintiff] is limited to simple repetitive tasks, limited public interaction, occasional contact with supervisors, and coworkers, and can adapt to occasional changes in the work routine. The record does support nonsevere adjustment disorder prior to the [Plaintiff's] DLI; however, during this period, [the Plaintiff's] mental impairment was treated conservatively with medication and did not require significant or advanced treatment. Moreover, Dr. Hymoff based these limitations on social isolation per records reviewed from 2007 to 2008, and he also cited records from 2012 to 2014 when providing testimony. Consequently, Dr. Hymoff is relying on medical evidence dated well after the [Plaintiff's] date last insured and outside of the period under review. The [Plaintiff's] course of treatment in 1996, as well as contemporaneous treatment notes with minimal objective findings, supports only minimal functional limitations and nonsevere mental impairment prior to June 30, 1996 . . . caus[ing] no more than mild limitation[.]

*Id.* at 19-20.

In so finding, the ALJ mischaracterized Dr. Hymoff's testimony in key respects.

Dr. Hymoff did not describe the Plaintiff's diagnosis for the relevant period as "adjustment disorder with depression NOS." *Id*. at 20. He found that the Plaintiff then suffered from depressive disorder NOS, which he described as "beyond an adjustment disorder." *Id*. at 40. Nor did Dr. Hymoff assess limitations based on "medical evidence dated well after the [Plaintiff's] date last insured and outside of the period under review." *Id*. at 20. On the contrary, he testified that the Plaintiff had "struggled with depression . . . most of his life, at least most of the time since '96," *id*. at 40, and that he had assessed limitations based "on the pattern of social isolation that's mentioned in the record," *id*. at 41-42.[2] He cited, as examples of the Plaintiff's history of "rather unusual interpersonal relationships," a series of run-ins with neighbors and "work in a game room" during which the Plaintiff "had all kinds of difficulties with the kids that came there." *Id*. at 42.[3]

The Commissioner emphasizes that nearly all of the incidents of run-ins with neighbors occurred in 2008 and 2012, postdating the relevant period, and that the

---

[2] For example, on August 13, 1996, psychiatrist Paul L. Maguire, M.D., described the Plaintiff as having a "3 y[ea]r history of low mood and neurovegetative and psychologic sxs [symptoms] of MDD [major depressive disorder]/dysthymia," Record at 336; on September 19, 1996, social worker Mark R. Olson, LCSW, described him as appearing to be "depressed and somewhat anxious," *id*.; and on January 24, 1997, Dr. Newcomb diagnosed him with depressive disorder NOS, noting that he "complained of depressive symptoms which have been present since 1980" and "severe since 1991," *id*. at 1004.

[3] During his September 19, 1996, visit with LCSW Olson, the Plaintiff reported that he had tried several jobs after returning to Maine, including "self employment . . . in the form of running a Game Room[,]" but had "so many problem[s] with the kids acting up inside and outside that he closed the place down." Record at 335. The Plaintiff added that, after a failed attempt to work pumping gas, he "tried to do the Game Room again" but "had problems with the kids dealing drugs on the property[,]" "closed the place[,]" and had not worked since 1993. *Id*.

5

game-room difficulties, dating from 1993 or earlier, predate it. *See* Commissioner's Brief (ECF No. 13) at 6-7.[4] Yet, the arc of the pattern of the Plaintiff's interpersonal difficulties was critical to Dr. Hymoff's assessment that the Plaintiff had mental limitations during the relevant period of January to June 1996, and the ALJ did not acknowledge or address that.

The Commissioner defends the decision on two other unavailing bases. First, he argues that "[t]he treatment notes regarding the incident between Plaintiff and his neighbors and the incident between Plaintiff and children in the game room appear to be based on Plaintiff's subjective reports—which the ALJ discounted." Commissioner's Brief at 6 n.2. Even assuming that these can fairly be characterized as "subjective reports," the ALJ did not question their validity. Rather, she mistakenly faulted Dr. Hymoff for "relying on medical evidence dated well after the [Plaintiff's] date last insured and outside of the period under review." Record at 20.

Second, the Commissioner contends that even if the ALJ mischaracterized Dr. Hymoff's testimony, any error is harmless because she supportably found it "inconsistent with Plaintiff's conservative treatment and the minimal objective findings" during the period at issue. Commissioner's Brief at 7-8. Yet, the ALJ's focus on records dating from the relevant period in 1996 was part of the problem. Dr. Hymoff acknowledged that there was "very little" in those records. Record at 39. Yet, he explained that the longitudinal record revealed a pattern of problematic social

---

[4] The Plaintiff notes that his disputes with neighbors date back to the 1990s. *See* Plaintiff's Brief at 12; Record at 609 (notation by John H. St. Andre, M.D., on October 9, 1998, that the Plaintiff reported that he was "having a boundary dispute with a neighbor which is close to fisticuffs").

6

interactions that warranted the assessment of limitations during that time. *See id.* at 39-42. The ALJ did not come to grips with that.

The ALJ's mischaracterizations of the Hymoff opinion as reflecting a lesser impairment of adjustment disorder and based solely on records postdating the Plaintiff's date last insured by at least ten years render her dismissal of that opinion unsupported by substantial evidence. The error is not harmless. As the Plaintiff notes, *see* Plaintiff's Brief at 13, the vocational expert present at his hearing testified that all of the jobs he identified in response to the ALJ's hypothetical questions would be eliminated with the addition of limitations to simple, repetitive tasks, only incidental contact with the public, and only occasional contact with supervisors and co-workers. *See* Record at 61.

Reversal and remand, therefore, are warranted. *See, e.g., Jennifer B. v. Kijakazi*, No. 1:20-cv-00469-JDL, 2022 WL 1643836, at *3 (D. Me. May 24, 2022) (holding that remand was required when an ALJ "mischaracterized the evidence by concluding" that the opinion of an agency examining consultant was consistent with the findings of two agency nonexamining consultants "and then relied upon this purported consistency" in adopting the nonexamining consultants' RFC assessments); *Meak v. Astrue*, No. 08-cv-102-P-H, 2008 WL 4822228, at *2, *5 (D. Me. Nov. 4, 2008) (rec. dec.) (holding that remand was required when an ALJ "fundamentally misunderstood [a treating source's potentially outcome-determinative] RFC opinion, as a result of which he rejected it for unsupportable reasons"), *aff'd*, ECF No. 11 (Nov. 25, 2008).

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent with this decision.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: June 7, 2024

/s/ Karen Frink Wolf
United States Magistrate Judge